IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| BLANCHE C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § Civil Action No. 6:24-cv-00069-BU <br> § <br> § <br> § <br> § <br> § <br> § |

# **FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Blanche E. Chappa seeks judicial review of a final adverse decision of the Commissioner of Social Security (Commissioner) under 42 U.S.C. § 405(g). Dkt. No. 1. This case was automatically referred to the undersigned with a designation to exercise the district court's full jurisdiction and conduct all proceedings in this case upon the consent of the parties. *See* Special Order No. 3-350. Chappa did not consent to the undersigned exercising the Court's full jurisdiction. Dkt. No. 7. Accordingly, this case was reassigned to the United States District Judge for the Northern District of Texas James Wesley Hendrix and referred to the undersigned per Special Order 3.

For the reasons explained below, the undersigned RECOMMENDS the Court REVERSE the Commissioner's decision and REMAND it to the Commissioner for further administrative action.

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

1

## I. JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff sues under 42 U.S.C. § 405(g). Venue is proper in this Court's San Angelo Division because Plaintiff resides in San Angelo. 42 U.S.C. § 405(g). The undersigned has the authority to enter this Findings, Conclusions, and Recommendations after this case was referred to him by District Judge Hendrix. Special Order No. 3-350 (N.D. Tex. Sept. 11, 2023).

## II. FACTUAL BACKGROUND

Chappa alleges a disability that began on August 6, 2021. Dkt. No. 13 at 4; Administrative Record, Dkt. No. 10 (Tr.) at 26. Chappa alleges she suffers from the following impairments: fibromyalgia, hyperthyroidism, gastrointestinal problems, osteoporosis, neuropathy, seizures, and radiculopathy. Dkt. No. 13 at 4. Chappa was fifty-five years old on the alleged disability onset date. Dkt. No. 13 at 6. Chappa has attained her G.E.D. and has previously worked as a job coach, exterminator, as well as a cleaner and presser. *Id*.

Chappa protectively filed a Title II application on October 27, 2021, for a period of disability and disability insurance benefits. Tr. at 26. On the same day, Chappa also filed an application for Supplemental Security Income (SSI). *Id*. The Social Security Administration (SSA) denied her claims on May 26, 2022, and again upon reconsideration on March 6, 2022. *Id*. On December 14, 2023, Administrative Law Judge (ALJ) Sherrill Carvalho held a hearing regarding Chappa's applications. *Id*. After reviewing her applications and the information presented at the hearing, the ALJ determined Chappa was

2

not disabled and denied her benefits on February 28, 2024. *Id*. at 42. Chappa appealed this decision to the Appeals Council (AC) which affirmed the ALJ's denial of benefits. *Id*. at 1-6.

### III. PROCEDURAL HISTORY
#### A.     ALJ's Decision

The ALJ conducted a hearing to review the denial of Chappa's application and determine whether she was disabled under the Act. *Id*. at 26. Shortly after this hearing, the ALJ determined that Chappa was not disabled.[2] *Id*. at 42. In doing so, the ALJ made the following findings (1) Chappa met the insured status requirements of the Act through December 31, 2022, (2) Chappa had not engaged in substantial gainful activity since August 11, 2021, (3) Chappa had the following impairments: hyperparathyroidism after resection of the left thyroid lobe, neuropathy in upper and lower extremities, osteoporosis, bilateral carpal tunnel syndrome, seizures, degenerative changes in cervical spine, neuroma and calcaneal spurs of feet bilaterally, and residual effects of removal of mass in third digit and right dominant flexor tendon, and (4) none of these impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in the Social Security Regulations. *Id*. at 28-31. Significant to this appeal, the ALJ found that Chappa's fibromyalgia did not constitute an impairment at step three. *Id*. at 31.

Considering these impairments, the ALJ determined that Chappa has a residual functioning capacity (RFC) to perform light work except she can:

---

[2] As discussed below, the Commissioner employs a five-step analysis to determine whether claimants are disabled under the Social Security Act.

    stand and walk a combined total of 4 hours. She can occasionally climb ramps and stairs; but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel crouch, or crawl. She can frequently handle and finger with the bilateral upper extremities. She must avoid unprotected heights, dangerous moving machinery, open flames and large open bodies of water.

*Id*. at 32.

Based on Chappa's RFC, age, education, and work experience, the ALJ concluded that Chappa could perform her past work as a job coach and thus, was not disabled. *Id*. at 40.

## IV.  LEGAL STANDARDS

To be entitled to Social Security benefits, a claimant must show that they are disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

Although a claimant bears the burden of establishing whether they meet the requirements for a disability, an ALJ's finding that a claimant has not satisfied their burden must be based on substantial evidence. *See, e.g.*, *Belk v. Colvin*, 648 F. App'x 452 (5th Cir. 2016) (per curiam). And judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C.

§ 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S.C. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies their initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

## V.   DISCUSSION

Chappa's appeal is based solely on the ALJ's conclusion that her fibromyalgia (FM) was not a medically determinative impairment (MDI). According to Chappa, this error was not harmless because it impacted the ALJ's subsequent opinions. For the reasons explained below, the undersigned agrees.

**A.  The ALJ failed to properly analyze Chappa's FM.**

a.  <u>Legal Standards</u>

In making their disability determination, the ALJ must consider whether the claimant has any medically determinable impairments (MDIs) and, if so, evaluate the severity of those impairments. 20 C.F.R. § 404.1520(4)(ii)–(iii). ALJ's are required to follow certain guidelines when assessing whether FM qualifies as a medically determinable impairment. *See generally Soc. Sec. Ruling, SSR 12-2p; Titles II & Xvi: Evaluation of Fibromyalgia*, SSR 12-2P (S.S.A. July 25, 2012). Specifically, the regulations require the

ALJ apply two tests when assessing a claimant's FM: (1) the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia (1990 Test) and (2) the 2010 ACR Preliminary Diagnostic Criteria (2010 Test). *Id*. at *2.

Under the 1990 Test a claimant must show the following: (1) a history of widespread pain, (2) at least 11 positive tender points on physical examination, found bilaterally as well as above and below the waist and, (3) evidence which excludes other potential sources of these symptoms. SSR 12-2p at *2–3. The 2010 test is similar in that it shares factors (1) and (3) but differs from the 1990 Test in that it does not require a showing of tender points. *See id*. at *3. Instead, the 2010 test requires the claimant show "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions" such as evidence of cognitive problems, fatigue, depression, "waking unrefreshed," anxiety disorder, or irritable bowel syndrome. *Id*. A claimant may also satisfy this requirement with evidence of "somatic symptoms" such as headaches, numbness or tingling, seizures, and weakness. *Id*. at 6 n. 9.

A claimant needs to only satisfy one of these tests for their FM to constitute an MDI. *Jessica M. v. O'Malley*, No. 4:23-CV-3702, 2024 WL 4860806, at *4 (S.D. Tex. Nov. 20, 2024). Accordingly, an ALJ cannot determine that a claimant's FM is not an MDI without applying both the 1990 and 2010 tests. *See id*. (finding error where the ALJ concluded the FM was not an MDI because it did not satisfy the 1990 test without further determining whether it satisfied the 2010 test).

7

b. Application

With these two tests in mind, the undersigned now turns to the ALJ's discussion of Chappa's FM. The ALJ found that Chappa's FM did not constitute an MDI. Tr. at 31. Despite Chappa's diagnosis of FM, the ALJ stated that

> the evidence did not appear to support the tender points in accordance with the ruling, as required. Physical examination findings in late 2021 did not corroborate the criteria were present, and the assessment of fibromyalgia continued to appear after reports of a history of fibromyalgia were made along with complaints of widespread pain. The underlying clinical findings do not appear to be supported in the corresponding records of care, and do not appear supported as medically determinable when considering the requisite criteria. However, the corresponding complaints as to widespread pain symptoms were evaluated further according to the impairments that have been identified and are supported by clinical findings.

Tr. at 31 (internal citations omitted).

The issue in the present case is whether this discussion properly assessed Chappa's FM under the 2010 test. Put a different way, did the ALJ consider the factor unique to the 2010 test: whether Chappa showed six or more FM symptoms? The above discussion does not explicitly mention the 2010 test, nor does it employ any of its language. The ALJ only specifically identifies "tender points" and only vaguely refers to "criteria" without specifying which test she is applying. Because the ALJ made no indication that she considered the 2010 "six manifestations" factor, she did not apply the proper legal standards.[3] *See Campbell v. Saul*, No. 2:21-CV-00010, 2022 WL 17729261 (S.D. Tex. Aug.

---

[3] The Commissioner's response attempts to supplement this discussion. However, because the Court can "affirm only on the grounds that the Commissioner stated for his decision," none of the medical evidence the Commissioner now uses to justify the ALJ's finding was mentioned in her opinion. *Copeland*, 771 F.3d at 923. The Commissioner notes that the ALJ cited to the regulations which provide the 2010 but this general citation is not determinative. *See* Dkt. No. 25 at 3. What the Commissioner's argument omits is that the citation the ALJ provides also contains the 1990 test. Because the ALJ did not further specify as to

10, 2022), *report and recommendation adopted*, No. 2:21-CV-00010, 2022 WL 17722666 (S.D. Tex. Aug. 25, 2022) (finding that the ALJ's application of only the 1990 test constituted legal error).

The ALJ's citations to the medical record may infer that she considered the 2010 test. In this discussion, the ALJ only references two pages of a medical report when she considers the unspecified "criteria." Tr. at 31. This reference is to Chappa's physical examination results. *Id*. (citing Tr. at 444, 447). The ALJ found that these records did not corroborate that unspecified "criteria" were present. *Id*. However, even assuming the ALJ was considering the 2010 test, these medical records do not provide substantial evidence that Chappa did not have the six manifestations of FM.

Chappa's recorded history, located directly above the results of her physical exam, indicate she suffered from some of the enumerated symptoms under the 2010 test. *Compare* Tr. at 436–37 (noting Chappa had reported sleep disturbance, constipation, dizziness, tingling, headaches, tinnitus, weakness, and being easily bruised) *with* SSR 12-2p at 6 n. 9 (listing the FM symptoms which may satisfy the 2010 test to include constipation, ringing in the ears, insomnia, tingling, dizziness, easy bruising, headaches, and muscle weakness). Though true some of the medical findings indicate that Chappa did not have some of the symptoms of FM, it does not rule out other qualifying symptoms. *See* Tr. at 436. The ALJ's reliance on these medical records, absent an explicit discussion of evidence demonstrating

---

which of the two tests located in this regulation she was applying, the undersigned does not find this argument persuasive.

9

Chappa's FM symptoms, does not provide substantial evidence to support the ALJ's finding her FM did not qualify as an MDI.

For the above reasons, the undersigned concludes that the ALJ did not apply the correct legal standards and, even if she did implicitly, her discussion does not provide substantial evidence for her conclusion.

### B. Whether the ALJ's error was harmless.

However, "procedural perfection is not required" and remand is not warranted unless a plaintiff was prejudiced by the Commissioner's error. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank*, 326 F.3d at 622). The undersigned cannot find the ALJ's analysis of Chappa's FM at step three was harmless because (1) Chappa could have satisfied the 2010 test and (2) a finding of her FM as an MDI could have altered the ALJ's analysis at the subsequent steps and supported a disability finding. *See McCurry v. Kijakazi*, No. 1:21-CV-731-RP-SH, 2022 WL 3135753 (W.D. Tex. Aug. 5, 2022), *report and recommendation adopted*, No. 1:21-CV-731-RP, 2022 WL 17732696 (W.D. Tex. Sept. 26, 2022)

First, as discussed above, there was medical evidence to suggest that Chappa suffered from six manifestations of FM. *See* Tr. at 436–37. Further, if the ALJ found Chappa's FM was an MDI at step three, she would have considered that condition at step

four.[4] The additional condition could have led the ALJ to conclude that Chappa's FM was severe enough to constitute a statutorily listed disability, automatically qualifying her as disabled. *See Moreno v. Comm'r of Soc. Sec. Admin.*, 698 F.Supp.3d 935, 941 (W.D. Tex. 2023) ("By failing to properly analyze Plaintiff's fibromyalgia and finding it was not medically determinable, the ALJ foreclosed the possibility of finding it was a basis for disability at step three.").

Finally, courts in this circuit have found an ALJ's misclassification of a claimant's FM constitutes reversible error because "all medically determinable impairments, including [nonsevere] impairments, must be taken into account in determining a claimant's RFC." *Moreno*, 698 F.Supp.3d at 942 (quoting *Patrick v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-333-TSL-MTP, 2022 WL 2813751, at *4 (S.D. Miss. June 30, 2022), *report and recommendation adopted*, 2022 WL 2813047 (S.D. Miss. July 18, 2022). Because the ALJ could have found Chappa's FM constituted an MDI under the 2010 test, it is also conceivable that such a finding would have resulted in a more limited RFC. Because a more limited RFC is conceivable, it is also likely that such RFC would have led the ALJ to conclude Chappa was disabled. *McCurry*, 2022 WL 3135753 at *4.

---

[4] Under the standard sequential evaluation, these determinations occur at steps two and three. However, because Chappa's application required a showing of insurance, the ALJ had to determine whether she met the insured status requirement prior to engaging in the sequential analysis. For this reason, the steps from the ALJ's opinion will be one greater than its corresponding number under the sequential analysis discussed above.

## VI.  CONCLUSION

For the reasons described above, the undersigned RECOMMENDS that the Court REVERSE the Commissioner's decision and REMAND the case for further administrative action.

## VII.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Entered this 12th day of June 2025.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE